UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v | ) | NO. 05-30013 |
| | ) | |
| ANTONIO MARIN | ) | |

## MOTION FOR A JUDGEMENT OF ACQUITTAL (RULE 29)

Now comes the defendant and respectfully requests this Honorable Court enter a judgement of acquittal on Counts 6 and 7 of the indictment as the evidence is insufficient to sustain a conviction.

Relative to count 6, the defendant states that evidence produced by the Government was insufficient to show the defendant's possession of the firearm was to advance or promote his criminal activity. The "in furtherance of" language requires the Government to prove the firearm had a specific and direct connection to the commission of the drug crime and that the firearm helped to facilitate , forward, advance or promote the commission of the crime. United States v Felton, 417 F. 3rd 97 (1st Cir. 2005), United States v. Delgado-Hernandez, 420 F. 3rd 16 (1st Cir. 2005).

Relative to Count 7, the defendant states the Government has not proved a predicate offense necessary to show the defendant possessed a firearm as a convicted felon. The plain language of 18 U.S.C. §921 (a)(20) indicates there will be no predicate conviction if the individual has had civil rights restored. In this matter the defendant's civil rights have to be assumed as restored because they were never taken away. Massachusetts restoration of defendant's civil rights occurred by virtue of the laws that existed when the defendant was convicted of the alleged predicate offenses. When the defendant was convicted of the alleged predicate offenses Massachusetts did not restrict the defendant's right to possess a firearm, therefore, the alleged predicate offenses do not qualify.

Massachusetts General Law was amended in 1998 by Ch. 140 §129 B to restrict individuals, in the defendant's position, from obtaining a firearm's license. Prior to 1998 there

was no restriction for a person in the defendant's position.

The plain meaning of 18 U.S.C. 921 (a)(20) requires courts to determine the effect of the restoration of civil rights at the time it is granted and not to consider whether the defendant's civil rights later were limited or expanded.  United States v. Cardwell, 967 F 2nd 1349 (9th Cir. 1992) *see* Memorandum and Order regarding U.S. v. Kahler, Criminal No. 02-10231-REK (attached).[1]

Respectfully submitted,

THE DEFENDANT

BY: /s/ Mark G. Mastroianni
95 State Street- Suite 309
Springfield, MA 01103
(413) 732-0222
BBO #556084

---

[1] Also attached Mass General Law Ch. 140 sec. 129 B including current version and reference to the 1998 amendment which changed the law before which the defendant did not have his civil rights interfered with by convictions.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIMINAL NO. 02-10231-REK |
| | ) |
| | ) |
| PETER KAHLER, | ) |
| Defendant | ) |
| | ) |

**Memorandum and Order**
October 9, 2003

## I. Pending Matters

Pending for decision are the following matters and related filings:

(1) Defendant's Memorandum of Law (filed February 19, 2003) (Docket No. 34).

(2) Government's Response to Defendant's Motion to Dismiss and the Accompanying Memorandum of Law (filed February 27, 2003) (Docket No. 35).

(3) Government's Motion *In Limine* (filed March 6, 2003) (Docket No. 37).

(4) Defendant's Supplemental Memorandum of Law (filed March 20, 2003) (Docket No. 41).

(5) Government's Response to Defendant's Supplemental Memorandum of Law (filed March 21, 2003) (Docket No. 42).

(6) Defendant's Response to Government's Response to Defendant's Supplemental Memorandum of Law (filed August 21, 2003) (Docket No. 50).

(7) Government's Motion to Strike Defendant's Response (filed August 22, 2003) (Docket No. 51).

## II. Procedural and Factual Background

In counts 1 and 2 of the indictment (Docket No. 8), the defendant is charged with violating 18 U.S.C. § 922(g)(1), prohibiting possession of firearms by a person convicted of a predicate offense. In 1996, the defendant was convicted of violating MASS. GEN. L. ch. 90 § 24, operating under the influence of liquor, a misdemeanor punishable by up to two and a half years imprisonment. Government's Motion *In Limine* (Docket No. 37) at 2; Defendant's Memorandum of Law (Docket No. 34) ("Motion") at 1-2.

The defendant has filed a Memorandum of Law contending that the state conviction is not a predicate offense under § 922(g)(1). Motion at 2-3. The parties have treated this filing as a Motion to Dismiss Counts 1 and 2 of the Indictment. See, e.g., Government's Response to Defendant's Motion to Dismiss and the Accompanying Memorandum of Law (Docket No. 35) ("Response") at 4.

## III. Disposition of the Pending Matters

### A. Government's Motion to Strike Defendant's Response

The Government asks that I strike Defendant's Response (Docket No. 50) as untimely. In the hearing on July 11, 2003, I ordered defendant to file a supplemental brief within one week. He did not file his supplemental brief until August 21.

Nonetheless, the Government has not been prejudiced by the delay, nor has the

scheduling in this matter been affected by it. In the order below, I deny the Government's motion to

strike.

### B. Defendant's Motion to Dismiss

At the hearing on July 11, I noted that Massachusetts' 1999 refusal to renew

defendant's firearms permit would have some bearing in this case. The defendant responded that he

had transferred ownership of his firearms to his wife, who was duly licensed. He indicated that he

would file a new submission providing evidence of the transfer. Defendant's Response to Government's

Response to Defendant's Supplemental Memorandum of Law ("Evidentiary Submission") does not

provide direct evidence of the transfer of ownership. It does, however, provide sufficient evidence that

the defendant and his wife at least considered the firearms collection to be "jointly own[ed]."

Evidentiary Submission at Exhibit B. Moreover, defendant's wife was duly licensed to own firearms. Id.

at Exhibit D. Given this, I proceed to adjudicate the legal contentions argued in the briefs before me.

Counts 1 and 2 of the indictment (Docket No. 8) charge the defendant with violating 18

U.S.C. § 922(g)(1). That provision forbids

> any person. . . who has been convicted in any court of. . . a crime
> punishable by imprisonment for a term exceeding one year. . . to ship or
> transport in interstate or foreign commerce, or possess in or affecting
> commerce, any firearm or ammunition; or to receive any firearm or
> ammunition which has been shipped or transported in interstate or
> foreign commerce.

18 U.S.C. § 922(g)(1) (1999 & Supp. IV). In addition,

> [a]ny conviction which has been expunged, or set aside or for which a
> person has been pardoned or has had civil rights restored shall not be
> considered a conviction for purposes of this chapter, unless such
> pardon, expungement, or restoration of civil rights expressly provides
> that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (1999 & Supp. IV). The question before me turns on whether the defendant's

1996 conviction is cognizable under § 921(a)(20).

Section 921(a)(20) sets up a two-part test. As applied in this case, I must first

determine whether the defendant's civil rights were restored. If so, I must further ascertain, under the

"unless" clause, whether the "restoration of civil rights expressly provides that the [defendant] may not

ship, transport, possess, or receive firearms." With respect to the first half of the test, the Government

concedes that the defendant's civil rights were never revoked. Response at 1. Therefore, under United

States v. Indelicato, 97 F.3d 627, 631 (1st Cir. 1996), his civil rights are to be treated as restored, and

the first half of the test is satisfied. At issue here is the second half of the test, which, if met, would

render the defendant's 1996 conviction a predicate offense under § 922(g)(1).

The Government contends that restrictions on the "restoration" of the defendant's civil

rights may be found in Massachusetts law generally. Response at 2 (citing United States v. Sullivan, 98

F.3d 686, 689 (1st Cir. 1996)). Massachusetts forbids individuals who have been convicted of a

misdemeanor carrying a maximum sentence of imprisonment for more than two years, such as the

defendant, from obtaining a firearm license. Response at 2-3 (citing Mass. Gen. L. ch. 140 §§ 129B-

129C). Since Massachusetts curtails the defendant's right to possess firearms, the Government

contends that the second test is satisfied.

4

The defendant responds that, when he was convicted of the predicate misdemeanor in 1996, Massachusetts law did not, in fact, restrict his right to possess a firearm. The Massachusetts General Court amended Mass. Gen. L. ch. 140 § 129B in 1998, at that point restricting individuals in defendant's position from obtaining a firearm license. Defendant's Supplemental Memorandum of Law (Docket No. 41) ("Supplemental Memo") at 3-4. Defendant's license remained operative until it expired in 1999. Id. at 3, n. 1.

The defendant argues that I must determine whether his civil rights were restricted at the time of his original conviction in 1996. In support of this proposition, the defendant cites three cases: United States v. Hall, 28 F.3d 1066, 1068 (10th Cir. 1994); United States v. Cardwell, 967 F.2d 1349 (9th Cir. 1992); and United States v. Norman, 129 F.3d 1393 (10th Cir. 1997). Id. at 4. By contrast, the Government argues that I must look to Massachusetts law as it existed at the time the conduct underlying the current charges occurred. It defends this position by pointing to Melvin v. United States, 78 F.3d 327 (7th Cir. 1996) and United States v. Denis, 297 F.3d 25 (1st Cir. 2002). Response to Defendant's Supplemental Memorandum of Law (Docket No. 42) ("Supplemental Response") at 2-3. Other than Denis (which I conclude, below, is not on point), neither party has cited any relevant First Circuit precedent, nor have I discovered any.

I find the Tenth Circuit's reasoning in Norman persuasive, and conclude that I must examine state law at the time of the predicate offense, i.e., in 1996. In Norman, the Tenth Circuit confronted a situation where the defendant had been previously convicted of a felony in Colorado. Under state law, the defendant's civil rights were restored upon his release from prison. Some time

5

after the defendant's release, Colorado amended its laws, making it illegal for a convicted felon to

possess firearms. 129 F.3d at 1397. The court stated:

> As the Ninth Circuit explained in <u>United States v. Cardwell</u>, 967 F.2d
> 1349 (9th Cir.1992):
>
>> Section 921(a)(20) states that section 922(g)(1) applies if the
>> pardon, expungement, or restoration of civil rights "expressly
>> provides" that the defendant may not ship, transport, possess,
>> or receive firearms. The plain meaning f this use of the present
>> tense is that the courts must determine the effect of the pardon,
>> expungement, or restoration of civil rights <u>at the time it is</u>
>> <u>granted</u> and cannot consider whether the defendant's civil rights
>> later were limited or expanded.
>
> We agree with our sister circuits. Section 921(a)(20) requires us to
> look to the law which was in effect at the time that Norman's civil rights
> were restored, and then to determine whether that law "expressly
> provides" that he may not ship, transport, possess, or receive firearms.
> As noted, Colorado law did not expressly limit Norman's possession of
> firearms at the time his civil rights were restored. Therefore,
> notwithstanding any later limitation which may have been imposed, his
> 1976 conviction could not serve as a predicate offense under §
> 922(g)(1), and the district court erred in refusing to dismiss.

<u>Id.</u> at 1397-98 (citations and footnotes omitted) (emphasis in original). I rule that the plain language of

the statute requires me to examine state law as it existed at the time of the restoration of civil rights.

Here, in contrast with the circumstances of in <u>Norman</u>, no explicit restoration of civil

rights was declared. The reasoning in <u>Norman</u>, however, remains applicable. Section 921(a)(20)

requires me to determine whether the "restoration of civil rights expressly provides" for restrictions on

the defendant's right to carry firearms. <u>Indelicato</u> requires me to treat the defendant's civil rights as

having been "restored" by the fact that they were never taken away. 97 F.3d 631. I am therefore to

determine whether the failure of Massachusetts to restrict the defendant's civil rights "expressly

6

provides" for a restriction on the defendant's right to carry firearms. In order to make sense of this task,

I must view Massachusetts' silence as an explicit decision not to restrict the civil rights of defendants.

Viewed in this light, Massachusetts' restoration of defendant's civil rights occurred by virtue of the law

as it existed when the defendant was convicted, i.e., in 1996. Since Massachusetts law, in 1996, did

not restrict the defendant's right to possess firearms, the "unless" clause in § 921(a)(20) is not satisfied,

and the conviction is not a predicate offense under § 922(g)(1).

Under the reasoning in Norman, which I have accepted, a contrary result would be

anomalous. If a state restores a defendant's civil rights after having taken them away, then later amends

its laws to restrict the defendant's right to possess firearms, courts are to look to the law at the time of

the predicate offense to determine whether § 921(a)(20)'s "unless" clause is satisfied. 129 F.3d at

1397-98. It would make little sense if the result were different if a state never revoked the defendant's

civil rights in the first place. See Indelicato, 97 F.3d at 630.

Nor are the cases the Government cites apposite. Citing Melvin v. United States, 78

F.3d 327 (7th Cir. 1996) and United States v. Denis, 297 F.3d 25 (1st Cir. 2002), the Government

contends that a circuit split exists on the issue confronted by Norman, and that the First Circuit is likely

to come to a conclusion at odds with that reached by the court in Norman. Supplemental Response at

3-4. Melvin, however, is not inconsistent with Norman or with my analysis. Central to the Melvin

court's analysis was the fact that "Illinois never 'restored' all of Melvin's civil rights within the meaning

of the second sentence of section 921(a)(20)." 78 F.3d at 329. Here, no doubt exists that

Massachusetts restored the defendant's civil rights. Nor is Denis relevant to my analysis. The defendant

in <u>Denis</u> was prosecuted under 18 U.S.C. § 922(g)(9). 297 F.3d at 27. In this case, my conclusion is dictated by the language of § 921(a)(20), a section that is not implicated in <u>Denis</u>.

      The Government's policy contention is unavailing. The Government contends that Massachusetts has determined that the defendant is not sufficiently trustworthy to carry a firearm. Supplemental Response at 4. But this argument begs the question: Which of Massachusetts' determinations am I to credit? In 1996, Massachusetts believed the defendant to be trustworthy; in 1998, it did not. As I explained earlier, § 921(a)(20) answers this question by reference to the time of the restoration of civil rights. Since Massachusetts considered the defendant trustworthy in 1996, his conviction at that time cannot serve as a predicate offense under § 922(g)(1).

8

## ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendant's Motion to Dismiss Counts 1 and 2 of the Indictment (contained in

Docket No. 34) is ALLOWED. Counts 1 and 2 of the indictment are dismissed.

(2) Government's Motion to Strike Defendant's Response (Docket No. 51) is

DENIED.

(3) Since Government's Motion *In Limine* (Docket No. 37) relates to evidence

pertaining to counts 1 and 2 of the indictment, that motion is DISMISSED as moot.

(4) A status and scheduling conference will be held on October 23, 2003 at 11:00 a.m.


_____/s/_____

Senior United States District Judge

9

http://print.westlaw.com/delivery.html?dataid=A0055800000061400...

Westlaw Attached Printing Summary Report for BONGIORNI, VINCE 3184553

| | |
|---|---|
| Date/Time of Request: | Friday, March 31, 2006 14:41:00 Central |
| Client Identifier: | MM |
| Database: | MA-ST-ANN |
| Citation Text: | MA ST 140 s 129B |
| Lines: | 874 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.



M.G.L.A. 140 § 129B

▷
Massachusetts General Laws Annotated Currentness
  Part I. Administration of the Government (Ch. 1-182)
    Title XX. Public Safety and Good Order (Ch. 133-148A)
      ❦ Chapter 140. Licenses (Refs & Annos)
       ❦ Sale of Firearms (Refs & Annos)

+++ CURRENT VERSION +++

VIEW ALL VERSIONS

    →§ 129B. Firearm identification cards; conditions and restrictions

A firearm identification card shall be issued and possessed subject to the following conditions and restrictions:

(1) Any person residing or having a place of business within the jurisdiction of the licensing authority or any person residing in an area of exclusive federal jurisdiction located within a city or town may submit to the licensing authority an application for a firearm identification card, or renewal of the same, which the licensing authority shall issue, unless the applicant:

(i) has ever, in a court of the commonwealth, been convicted or adjudicated a youthful offender or delinquent child, both as defined in section 52 of chapter 119, for the commission of: (a) a felony; (b) a misdemeanor punishable by imprisonment for more than two years; (c) a violent crime as defined in section 121; (d) a violation of any law regulating the use, possession, ownership, transfer, purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; or (e) a violation of any law regulating the use, possession or sale of controlled substances, as defined in section 1 of chapter 94C including, but not limited to, a violation under said chapter 94C; provided, however, that except for the commission of a violent crime or a crime involving the trafficking of controlled substances, if the applicant has been so convicted or adjudicated or released from confinement, probation or parole supervision for such conviction or adjudication, whichever is last occurring, not less than five years immediately preceding such application, such applicant's right or ability to possess a non-large capacity rifle or shotgun shall be deemed restored in the commonwealth with respect to such conviction or adjudication and such conviction or adjudication shall not disqualify such applicant for a firearm identification card;

(ii) has, in any other state or federal jurisdiction, been convicted or adjudicated a youthful offender or delinquent child for the commission of: (a) a felony; (b) a misdemeanor punishable by imprisonment for more than two years; (c) a violent crime as defined in section 121; (d) a violation of any law regulating the use, possession, ownership, transfer,

http://print.westlaw.com/delivery.html?dataid=A005580000061400...

purchase, sale, lease, rental, receipt or transportation of weapons or ammunition for which a term of imprisonment may be imposed; or (e) a violation of any law regulating the use, possession or sale of controlled substances, as defined in section 1 of chapter 94C; provided, however, that, except for the commission of a violent crime or a crime involving the trafficking of weapons or controlled substances, if the applicant has been so convicted or adjudicated or released from confinement, probation or parole supervision for such conviction or adjudication, whichever is last occurring, not less than five years immediately preceding such application, and such applicant's right or ability to possess a rifle or shotgun has been fully restored in the jurisdiction wherein the subject conviction or adjudication was entered, such conviction or adjudication shall not disqualify such applicant for a firearm identification card;

(iii) has been confined to any hospital or institution for mental illness, unless the applicant submits with his application an affidavit of a registered physician attesting that such physician is familiar with the applicant's mental illness and that in such physician's opinion the applicant is not disabled by such an illness in a manner that should prevent the applicant from possessing a firearm, rifle or shotgun;

(iv) is or has been under treatment for or confinement for drug addiction or habitual drunkenness, unless such applicant is deemed to be cured of such condition by a licensed physician, in which case he may make application for such card after the expiration of five years from the date of such confinement or treatment and upon presentation of an affidavit issued by such physician to the effect that such physician knows the applicant's history of treatment and that in such physician's opinion the applicant is deemed cured;

(v) is at the time of the application less than 15 years of age;

(vi) is at the time of the application more than 15 but less than 18 years of age, unless the applicant submits with his application a certificate of his parent or guardian granting the applicant permission to apply for a card;

(vii) is an alien;

(viii) is currently subject to: (a) an order for suspension or surrender issued pursuant to section 3B or 3C of chapter 209A or a similar order issued by another jurisdiction; or (b) a permanent or temporary protection order issued pursuant to chapter 209A or a similar order issued by another jurisdiction; or

(ix) is currently the subject of an outstanding arrest warrant in any state or federal jurisdiction.

(2) Within seven days of the receipt of a completed application for a card, the licensing authority shall forward one copy of the application and one copy of the applicant's fingerprints to the colonel of state police, who shall, within 30 days, advise the licensing authority, in writing, of any disqualifying criminal record of the applicant arising from within or without the commonwealth and whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons from possessing a card; provided, however, that the taking of fingerprints shall not be required in issuing the renewal of a card if the renewal applicant's fingerprints are on file with the department of state police. In searching for any disqualifying history of the applicant, the colonel shall utilize, or cause to be utilized, files maintained by the department of mental health, department of probation and statewide and nationwide criminal justice, warrant and protection order information systems and files including, but not limited to, the National Instant Criminal Background Check System. If the information available to the colonel does not indicate that the possession of a non-large capacity rifle or shotgun by the applicant would be in violation of state or federal law, he shall certify such fact, in writing, to the licensing authority within such 30 day period.

(3) The licensing authority may not prescribe any other condition for the issuance of a firearm identification card and shall, within 40 days from the date of application, either approve the application and issue the license or deny the application and notify the applicant of the reason for such denial in writing; provided, however, that no such card shall be issued unless the colonel has certified, in writing, that the information available to him does not indicate that the possession of a rifle or shotgun by the applicant would be in violation of state or federal law.

(4) A firearm identification card shall be revoked or suspended by the licensing authority or his designee upon the occurrence of any event that would have disqualified the holder from being issued such card or from having such card renewed or for a violation of a restriction provided under this section. Any revocation or suspension of a card shall be in writing and shall state the reasons therefor. Upon revocation or suspension, the licensing authority shall take

possession of such card and receipt for fee paid for such card, and the person whose card is so revoked or suspended shall take all action required under the provisions of section 129D. No appeal or post-judgment motion shall operate to stay such revocation or suspension. Notices of revocation and suspension shall be forwarded to the executive director of the criminal history systems board and the commissioner of probation and shall be included in the criminal justice information system. A revoked or suspended card may be reinstated only upon the termination of all disqualifying conditions.

(5) Any applicant or holder aggrieved by a denial, revocation or suspension of a firearm identification card, unless a hearing has previously been held pursuant to chapter 209A, may, within either 90 days after receipt of notice of such denial, revocation or suspension or within 90 days after the expiration of the time limit in which the licensing authority is required to respond to the applicant, file a petition to obtain judicial review in the district court having jurisdiction in the city or town wherein the applicant filed for or was issued such card. A justice of such court, after a hearing, may direct that a card be issued or reinstated to the petitioner if the justice finds that such petitioner is not prohibited by law from possessing such card.

(6) A firearm identification card shall not entitle a holder thereof to possess: (i) a large capacity firearm or large capacity feeding device therefor, except under a Class A license issued to a shooting club as provided under section 131 or under the direct supervision of a holder of a Class A license issued to an individual under section 131 at an incorporated shooting club or licensed shooting range; or (ii) a non-large capacity firearm or large capacity rifle or shotgun or large capacity feeding device therefor, except under a Class A license issued to a shooting club as provided under section 131 or under the direct supervision of a holder of a Class A or Class B license issued to an individual under section 131 at an incorporated shooting club or licensed shooting range. A firearm identification card shall not entitle a holder thereof to possess any rifle or shotgun that is, or in such manner that is, otherwise prohibited by law. A firearm identification card shall be valid for the purpose of purchasing and possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate. Except as otherwise provided herein, a firearm identification card shall not be valid for the use, possession, ownership, transfer, purchase, sale, lease, rental or transportation of a rifle or shotgun if such rifle or shotgun is a large capacity weapon as defined in section 121.

(7) A firearm identification card shall be in a standard form provided by the executive director of the criminal history systems board in a size and shape equivalent to that of a license to operate motor vehicles issued by the registry of motor vehicles pursuant to section 8 of chapter 90 and shall contain an identification number, name, address, photograph, fingerprint, place and date of birth, height, weight, hair color, eye color and signature of the cardholder and shall be marked "Firearm Identification Card". If a firearm identification card is issued for the sole purpose of purchasing or possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate, such card shall clearly state that such card is valid for such limited purpose only. The application for such card shall be made in a standard form provided by the executive director of the criminal history systems board which shall require the applicant to affirmatively state, under the pains and penalties of perjury, that he is not disqualified on any of the grounds enumerated in clauses (i) to (ix), inclusive, from being issued such card.

(8) Any person who knowingly files an application containing false information shall be punished by a fine of not less than $500 nor more than $1,000 or by imprisonment for not less than six months nor more than two years in a house of correction, or by both such fine and imprisonment.

(9) A firearm identification card shall be valid, unless revoked or suspended, for a period of not more than 6 years from the date of issue, except that if the cardholder applied for renewal before the card expired, the card shall remain valid for a period of 90 days after the stated expiration date on the card, unless the application for renewal is denied. A card issued on February 29 shall expire on March 1. The executive director of the criminal history systems board shall send by first class mail to the holder of a firearm identification card, a notice of the expiration of the card not less than 90 days before its expiration, and shall enclose with the notice a form for the renewal of the card. The executive director of the criminal history systems board shall include in the notice all pertinent information about the penalties that may be imposed if the firearm identification card is not renewed within the 90 days before expiration.

(9A) Except as provided in clause (9B), the fee for an application for a firearm identification card shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in the case of revocation or denial. The licensing authority shall retain $25 of the fee; $50 of the fee shall be deposited in the General Fund; and $25 of the fee shall be deposited in the Firearms Fingerprint Identity Verification Trust Fund. Notwithstanding any general or special

law to the contrary, licensing authorities shall deposit quarterly that portion of the firearm identification card application fee which is to be deposited into the General Fund, not later than January 1, April 1, July 1 and October 1 of each year.

(9B) The application fee for a firearm identification card issued for the sole purpose of purchasing or possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate shall be $25, which shall be payable to the licensing authority and shall not be prorated or refunded in the case of revocation or denial. The licensing authority shall retain 50 per cent of the fee and the remaining portion shall be deposited in the General Fund. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit quarterly that portion of the firearm identification card application fee which is to be deposited into the General Fund, not later than January 1, April 1, July 1 and October 1 of each year. There shall be no application fee for the renewal of a firearm identification card issued under this clause.

A firearm identification card issued under this clause shall display, in clear and conspicuous language, that the card shall be valid only for the purpose of purchasing or possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate.

(10) Any person over the age of 70 shall be exempt from the requirement of paying a renewal fee for a firearm identification card.

(11) A cardholder shall notify, in writing, the licensing authority that issued such card, the chief of police into whose jurisdiction such cardholder moves and the executive director of the criminal history systems board of any change of address. Such notification shall be made by certified mail within 30 days of its occurrence. Failure to so notify shall be cause for revocation or suspension of such card.

(12) Notwithstanding the provisions of section 10 of chapter 269, any person in possession of a non-large capacity rifle or shotgun whose firearm identification card issued under this section is invalid for the sole reason that it has expired, meaning after 90 days beyond the stated expiration date on the card, but who shall not be disqualified from renewal upon application therefor under this section, shall be subject to a civil fine of not less than $500 nor more than $5,000 and the provisions of said section 10 of said chapter 269 shall not apply; provided, however, that the exemption from the provisions of said section 10 of said chapter 269 provided herein shall not apply if: (i) such firearm identification card has been revoked or suspended, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; (ii) revocation or suspension of such firearm identification card is pending, unless such revocation or suspension was caused by failure to give notice of a change of address as required under this section; or (iii) an application for renewal of such firearm identification card has been denied. Any law enforcement officer who discovers a person to be in possession of a rifle or shotgun after such person's firearm identification card has expired, meaning after 90 days beyond the stated expiration date on the card, or has been revoked or suspended solely for failure to give notice of a change of address shall confiscate any rifle or shotgun and such expired or suspended card then in possession, and such officer shall forward such card to the licensing authority by whom it was issued as soon as practicable. Any confiscated weapon shall be returned to the owner upon the renewal or reinstatement of such expired or suspended card within one year of such confiscation or such weapon may be otherwise disposed of in accordance with the provisions of section 129D. Pending the issuance of a renewed firearm identification card, a receipt for the fee paid, after five days following issuance, shall serve as a valid substitute and any rifle or shotgun so confiscated shall be returned, unless the applicant is disqualified. The provisions of this paragraph shall not apply if such person has a valid license to carry firearms issued under section 131 or 131F.

(13) Upon issuance of a firearm identification card under this section, the licensing authority shall forward a copy of such approved application and card to the executive director of the criminal history systems board, who shall inform the licensing authority forthwith of the existence of any disqualifying condition discovered or occurring subsequent to the issuance of a firearm identification card under this section.

(14) Nothing in this section shall authorize the purchase, possession or transfer of any weapon, ammunition or feeding device that is, or in such manner that is, prohibited by state or federal law.

(15) The secretary of the executive office of public safety, or his designee, may promulgate regulations to carry out the purposes of this section.

CREDIT(S)

Added by St.1968, c. 737, § 7. Amended by St.1969, c. 799, § 7; St.1971, c. 225; St.1972, c. 312, §§ 1, 2; St.1976, c. 239; St.1989, c. 339; St.1994, c. 24, §§ 1, 2; St.1996, c. 151, § 317; St.1996, c. 200, § 27; St.1998, c. 180, § 29; St.1998, c. 358, § 4; St.2000, c. 159, § 233; St.2000, c. 236, §§ 18, 19; St.2002, c. 513, § 1; St.2003, c. 26, § 428, eff. July 1, 2003; St.2003, c. 46, § 102, eff. July 31, 2003; St.2003, c. 140, § 34, eff. Nov. 26, 2003; St.2004, c. 65, §§ 23, 24, eff. April 5, 2004; St.2004, c. 150, §§4 to 8, eff. Sept. 13, 2004.

HISTORICAL AND STATUTORY NOTES

2006 Main Volume

2002 Legislation

St.2002, c. 513, § 1, approved Jan. 1, 2003, effective April 1, 2003, rewrote cl. (9), which prior thereto read:

"(9) A firearm identification card shall be valid, unless revoked or suspended, for a period of not more than four years from the date of issue. Any card issued on February 29 shall expire on March 1. The executive director of the criminal history systems board shall send by first class mail to the holder of each such firearm identification card, a notice of the expiration of such card not less than 90 days prior to such expiration, and shall enclose therein a form for the renewal of such card. The executive director of the criminal history systems board shall include in his notice all pertinent information relative to the penalties that may be imposed in the event that such firearm identification card is not renewed within the 90 days prior to expiration. The fee for such application shall be $25, which fee shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain one-half of such fee and the remaining portion shall be deposited into the Firearms Record Keeping Fund established under section 2SS of chapter 29; provided, however, that any renewal applicant for a firearm identification card issued for the sole purpose of purchasing or possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate shall not be subject to such application fee."

2003 Legislation

St.2003, c. 26, § 428, an emergency act, approved June 30, 2003, and by § 715 made effective July 1, 2003, in cl. (9), rewrote the fifth and sixth sentences, which prior thereto read, "The fee for such application shall be $25, which fee shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain one-half of such fee and the remaining portion shall be deposited into the Firearms Record Keeping Fund established under section 2SS of chapter 29."

St.2003, c. 46, § 102, an emergency act, approved July 31, 2003, effective July 31, 2003, in cl. (9), inserted the seventh sentence.

St.2003, c. 140, § 34, an emergency act, approved Nov. 26, 2003, effective Nov. 26, 2003, rewrote cl. (9), which prior thereto read:

"(9) A firearm identification card shall be valid, unless revoked or suspended, for a period of not more than four years from the date of issue. Any card issued on February 29 shall expire on March 1. The executive director of the criminal history systems board shall send by first class mail to the holder of each such firearm identification card, a notice of the expiration of such card not less than 90 days prior to such expiration, and shall enclose therein a form for the renewal of such card. The executive director of the criminal history systems board shall include in his notice all pertinent information relative to the penalties that may be imposed in the event that such firearm identification card is not renewed within the 90 days prior to expiration. The fee for the application shall be $100, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The licensing authority shall retain $25 of the fee; $50 of the fee shall be deposited into the general fund of the commonwealth; and $25 of the fee shall be deposited in the Firearms Fingerprint Identity Verification Trust Fund; but any renewal applicant for a firearm identification card issued for the sole purpose of purchasing or possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate shall not be subject to the application

fee. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit quarterly such portion of the firearm identification card application fee as is to be deposited into the General Fund, not later than January 1, April 1, July 1 and October 1 of each year. Notwithstanding any general or special law to the contrary, licensing authorities shall deposit such portion of the firearm identification card application fee into the Firearms Record Keeping Fund quarterly, not later than January 1, April 1, July 1 and October 1 of each year. Any renewal applicant for a firearm identification card issued for the sole purpose of purchasing or possessing chemical mace, pepper spray or other similarly propelled liquid, gas or powder designed to temporarily incapacitate shall not be subject to such application fee."

; and inserted cls. (9A) and (9B).

2004 Legislation

St.2004, c. 65, § 23, an emergency act, approved April 5, 2004, effective April 5, 2004, in par. (9A), added the third sentence.

St.2004, c. 65, § 24, an emergency act, approved April 5, 2004, effective April 5, 2004, in par. (9B), in the first paragraph, inserted the third sentence.

St. 2004, c. 150, § 4, approved July 1, 2004, effective Sept. 13, 2004, in cl. (7), in the first sentence, inserted "in a size and shape equivalent to that of a license to operate motor vehicles issued by the registry of motor vehicles pursuant to section 8 of chapter 90". Emergency declaration by the Governor was filed Sept. 13, 2004.

Section 5 of St.2004, c. 150, in cl. (9), in the first sentence, substituted "6" for "4".

Section 6 of St.2004, c. 150, in cl. (9), in the first sentence, inserted ", except that if the cardholder applied for renewal before the card expired, the card shall remain valid for a period of 90 days after the stated expiration date on the card, unless the application for renewal is denied".

Section 7 of St.2004, c. 150, in cl. (12), in the first sentence, inserted ", meaning after 90 days beyond the stated expiration date on the card".

Section 8 of St.2004, c. 150, in cl. (12), in the second sentence, substituted "expired, meaning after 90 days beyond the stated expiration date on the card, or" for "expired or".

2002 Main Volume

St.1968, c. 737, § 7, was approved July 20, 1968.

Section 18 of St.1968, c. 737, provides:

"The provisions of section one hundred and twenty-nine B of chapter one hundred and forty of the General Laws, inserted by section seven of this act, of section one hundred and thirty of said chapter one hundred and forty, inserted by section eight of this act, and of section ten of chapter two hundred and sixty-nine of the General Laws, inserted by section twelve of this act, shall not apply until January first, nineteen hundred and sixty-nine; provided, however, that any person may apply for the firearm identification card as provided in said section one hundred and twenty-nine B at any time after the effective date of said section seven and, pending the issuance or denial of said firearm identification card, written receipt for the fee paid shall serve as a valid substitute for said firearm identification card."

St.1969, c. 799, § 7, approved Aug. 24, 1969, rewrote the section, which prior thereto read:

"Any person may submit to the licensing authority application for a firearm identification card, which such person shall be entitled to, unless the applicant

"(a) Has within the last five years been convicted of a felony in any state or federal jurisdiction, or within that period

has been released from a state prison or penitentiary, or

"(b) Has been confined to any hospital or institution for mental illness, except where the applicant shall submit with the application an affidavit of a registered physician that he is familiar with the applicant's history of mental illness and that in his opinion the applicant is not disabled by such illness in a manner which should prevent his possessing a rifle or shotgun, or

"(c) Has been convicted of a violation of any federal or state narcotic or harmful drug law, or is under treatment or confinement for drug addiction or habitual drunkenness, except when he is deemed to be cured of such condition by a competent medical authority, he may make application for said license after the expiration of five years from the date of such finding and upon the presentation of an affidavit issued by said authority to that effect, or

"(d) Is at the time of the application under the age of fifteen, or

"(e) Is at the time of the application fifteen years of age or over but under the age of eighteen, except where the applicant submits with his application a certificate of his parent or guardian granting the applicant permission to apply for a card.

"The licensing authority may not prescribe any other conditions for the issuance of a card and he shall within thirty days from the date of application either approve the application and issue the card, or deny the application and notify the applicant of the reason for such denial in writing.

"A card may be revoked by the commissioner or suspended for such period as he may set, only upon the occurrence of any event which would have disqualified the holder from being issued the card. Any suspension or revocation of a card shall be in writing and shall state the reason therefor. Upon revocation or suspension, the commissioner shall take possession of said card.

"Any applicant or holder aggrieved by a denial, revocation or suspension of a card may within ninety days after receipt of notice appeal to the district court for a review of such action.

"Said card shall be in a form prescribed by the commissioner and shall contain an identification number, the name and address of the holder, his height, weight, and hair and eye color, and his signature, and shall be captioned "firearm identification card". The application for a card shall be made in triplicate on a form prescribed by the commissioner which shall require the applicant affirmatively to state that he is not disqualified for any of the foregoing reasons from possession of a card.

"Said card shall be valid for five years and shall be subject to automatic renewal upon sworn application, and without investigation, unless the licensing authority has reason to believe that the status of the applicant has changed since the previous application. The fee for an application for or a renewal of a card shall be two dollars, which shall be payable to the licensing authority.

"Upon receipt of an application for a card, the licensing authority shall forward such information concerning the applicant as is in his possession to the commissioner who shall within five days report to the licensing authority whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons from possessing a card. The licensing authority may also make inquiries concerning the applicant to the department of mental health and shall receive prompt and full cooperation from such department in any investigation of an applicant."

St.1971, c. 225, approved April 27, 1971, in the last paragraph, in the second sentence, substituted ", when in doubt about the validity of the applicant's negative or positive statement relative to past hospitalization for mental disorder, may also" for "may".

St.1972, c. 312, § 1, approved May 25, 1972, in the first paragraph, in cl. (a), substituted "confinement" for "a state prison or penitentiary" and added cl. (f).

Section 2 of St.1972, c. 312, rewrote the fifth paragraph, which prior thereto read:

"Said card shall be valid for five years; provided, that the licensing authority may renew such card on the anniversary of the applicant's date of birth occurring not less than four years but not more than five years from the date of original issue, and shall be subject to automatic renewal upon application and affirmative statement, without investigation, unless the licensing authority has reason to believe that the status of the applicant has changed since the previous application. The fee for an application and card, or for renewal of a card, shall be two dollars, which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial."

St.1976, c. 239, approved July 9, 1976, in the first paragraph, in the introductory clause, inserted "or any person residing in an area of exclusive federal jurisdiction located within a city or town".

St.1989, c. 339, approved Aug. 3, 1989, in the fifth paragraph, in the fourth sentence, substituted "thirty days" for "ten days".

St.1994, c. 24, § 1, by § 11 made effective July 1, 1994, in the first paragraph, added cl. (g).

Section 2 of St.1994, c. 24, in the third paragraph, inserted "unless a hearing has previously been held pursuant to section three B of chapter two hundred and nine A".

St.1994, c. 24, was approved May 25, 1994. Emergency declaration by the Governor was filed June 7, 1994.

St.1996, c. 151, § 317, approved June 30, 1996, and by § 690 made effective July 1, 1996, in the fourth paragraph, in the first and second sentences, purported to substitute "executive director of the criminal history systems board" for "commissioner of public safety" but apparently intended to substitute "executive director of the criminal history systems board" for "commissioner"; and, in the fifth paragraph, in the third sentence, substituted "executive director of the criminal history systems board" for "commissioner of public safety".

St.1996, c. 200, § 27, an emergency act, approved July 27, 1996, and by § 39 made effective Oct. 1, 1996, in the first paragraph, added cl. (h).

St.1998, c. 180, § 29, approved July 23, 1998, rewrote the section, which prior thereto read:

"Any person residing or having a place of business within the jurisdiction of the licensing authority or any person residing in an area of exclusive federal jurisdiction located within a city or town may submit to the licensing authority application for a firearm identification card, which such person shall be entitled to, unless the applicant (a) has within the last five years been convicted of a felony in any state or federal jurisdiction, or within that period has been released from confinement where such person was serving a sentence for a felony conviction, or (b) has been confined to any hospital or institution for mental illness, except where the applicant shall submit with the application an affidavit of a registered physician that he is familiar with the applicant's history of mental illness and that in his opinion the applicant is not disabled by such illness in a manner which should prevent his possessing a firearm, rifle or shotgun, or (c) has within the last five years been convicted of a violation of any state or federal narcotic or harmful drug law, or within that period has been released from confinement for such a conviction; or is or has been under treatment for or confinement for drug addiction or habitual drunkenness, except when he is deemed to be cured of such condition by a registered physician, he may make application for said card after the expiration of five years from the date of such confinement or treatment and upon presentation of an affidavit issued by said physician to the effect that the physician knows the applicant's history of treatment and that in his opinion the applicant is deemed cured, or (d) is at the time of the application under the age of fifteen, or (e) is at the time of the application fifteen years of age or over but under the age of eighteen, except where the applicant submits with his application a certificate of his parent or guardian granting the applicant permission to apply for a card, or (f) is an alien or, (g) is currently the subject of an order issued pursuant to section three B of chapter two-hundred and nine A, or (h) has within the last five years been adjudicated a youthful offender, as defined in section fifty-two of chapter one hundred and nineteen, including those who did not receive an adult sentence, or within the last five years has been released from confinement where such person was serving a sentence as a youthful offender.

"The licensing authority may not prescribe any other condition for the issuance of a card and it shall within thirty days from the date of application either approve the application and issue the card or deny the application and notify the

applicant of the reason for such denial in writing. Pending issuance of the card, a receipt for the fee paid shall, after five days from issuance, serve as a valid substitute, unless the applicant is disqualified. Written notice of denial of the application shall void the receipt and require its immediate surrender. A card may be revoked by the licensing authority or his delegate or suspended for such period as he may set, only upon the occurrence of any event which would have disqualified the holder from being issued the card. Any suspension or revocation of a card shall be in writing and shall state the reason therefor. Upon revocation or suspension, the licensing authority shall take possession of said card and receipt for fee paid for such card.

"Any applicant or holder aggrieved by a denial, revocation or suspension of a card unless a hearing has previously been held pursuant to section three B of chapter two hundred and nine A may within ninety days after receipt of notice appeal to the district court for a review of such action.

"Said card shall be in a form prescribed by the executive director of the criminal history systems board and shall contain an identification number, the name and address of the holder, his place and date of birth, his height, weight, and hair and eye color, and his signature and shall be captioned 'Firearm Identification Card'. The application for a card shall be made in multiple on a form prescribed by the executive director of the criminal history systems board which shall require the applicant affirmatively to state that he is not disqualified for any of the foregoing reasons from possession of a card.

"Said card shall be valid until revoked or suspended. The fee for an application and card shall be two dollars which shall be payable to the licensing authority and shall not be prorated or refunded in case of revocation or denial. The card holder shall notify, in writing, both the issuing authority and the executive director of the criminal history systems board of any change in his address. Such notification shall be made within thirty days of its occurrence.

"Upon receipt of an application for a card, the licensing authority shall forward a copy of such application to the commissioner of public safety, who shall within twenty-one days advise in writing of any disqualifying criminal record, if any, of the applicant and whether there is reason to believe that the applicant is disqualified for any of the foregoing reasons from possessing a card. The licensing authority, when in doubt about the validity of the applicant's negative or positive statement relative to past hospitalization for mental disorder, may also make inquiries concerning the applicant to the department of mental health for the purpose of determining eligibility for the firearm identification card and shall receive prompt and full cooperation from such department for that purpose in any investigation of the applicant."

Section 73 of St.1998, c. 180, provides:

"Notwithstanding the provisions of any general or special law or rule or regulation to the contrary, all firearm identification cards issued under section 129B of chapter 140 of the General Laws prior to the effective date of this act shall expire on the following schedule: if a person's anniversary of birth is between July 1 and December 31, inclusive, such card shall expire on the cardholder's anniversary of birth in 1999; if a person's anniversary of birth is between January 1 and June 30, inclusive, such card shall expire on the holder's anniversary of birth in 2000. Any such card issued to an applicant born on February 29, for the purposes described herein, shall expire on March 1. Firearm identification cards issued or renewed between July 1, 1999, and June 30, 2000, shall expire as follows: cards issued or renewed in July, August, or September 1999 shall expire on the issuance or renewal date in 2003 and every four years thereafter; cards issued in October, November, or December 1999 shall expire on the issuance or renewal date in 2004 and every four years thereafter; cards issued in January, February, or March 2000 shall expire on the issuance or renewal date in 2005 and every four years thereafter; and cards issued or renewed in April, May, or June 2000 shall expire on the issuance or renewal date in 2006 and every four years thereafter. A firearm identification card lawfully possessed on the effective date of this act shall be valid, unless revoked or suspended, until it expires under this section for the purpose of possessing large capacity rifles or shotguns or large capacity feeding devices therefor or possessing any firearm or feeding device lawfully owned on the effective date of this act that was purchased with a permit issued under section 131A of said chapter 140; provided, however, that such card shall not be valid for the purpose of purchasing, leasing or otherwise receiving through transfer large capacity rifles or shotguns or large capacity feeding devices. Nothing herein shall prohibit such person from possessing, purchasing, leasing or otherwise receiving through transfer nonlarge capacity rifles, shotguns or ammunition feeding devices therefor or from applying for a license to carry firearms pursuant to the provisions of said section 131 of said chapter 140."

"Any person who lawfully owns a large capacity or nonlarge capacity firearm or feeding device therefor, on the

effective date of this act that was purchased with a permit issued under said section 131A of said chapter 140 shall, unless such firearm and feeding device are transferred in accordance with the provisions of said chapter 140, apply for a firearm identification card under the provisions of section 129B of said chapter 140. Unless such applicant is disqualified under the provisions of said section 129B, such card shall be issued; provided, however, that if such card may not be issued, all firearms, ammunition and ammunition feeding devices therefor shall be surrendered in accordance with the provisions of section 129D of said chapter 140; provided further, that the requirements for obtaining a card under said section 129B shall not apply to such person that possesses valid proof of exemption under the provisions of section 129C of said chapter 140. Nothing herein shall permit such person to possess or carry any firearm outside his residence or business unless such person obtains a Class A or Class B license to carry firearms pursuant to the provisions of said section 131 of said chapter 140."

"Any license to carry firearms lawfully possessed on the effective date of this act shall be valid, unless revoked or suspended, until the stated expiration date of such license for all lawful purposes for which it was issued and such license shall be deemed a Class A license."

"The secretary of the executive office of public safety or his designee shall promulgate regulations necessary to implement the provisions of this act, and shall ensure that notice be provided through the most effective means possible to each such cardholder and licensee of the upcoming expiration dates of such cards and licenses, and instructing such holders with regard to renewal procedures, entitlements and restrictions provided under this act including, but not limited to, entitlements and restrictions relative to large capacity weapons and ammunition feeding devices." [Amended by St.1998, c. 358, § 11; St.2000, c. 159, § 313.]

St.1998, c. 358, § 4, an emergency act, approved Oct. 19, 1998, and by § 12 made effective as of Oct. 21, 1998, in par. 3, substituted "40" for "'30".

St.2000, c. 159, § 233, an emergency act, approved July 28, 2000, and by § 498 made effective as of July 1, 2000, in par. (9), in the first sentence, deleted "and shall expire on the anniversary of the cardholder's date of birth occurring not less than three years but not more than four years from the date of issue" following "from the date of issue".

St.2000, c. 236, § 18, an emergency act, approved Aug. 10, 2000, and by § 104 made effective June 30, 2000, in par. (9), deleted the second sentence, which read: "Any renewal thereof shall expire on the anniversary of the cardholder's date of birth occurring not less than three years but not more than four years from the effective date of such card."

St.2000, c. 236, § 19, an emergency act, approved Aug. 10, 2000, and by § 104 made effective June 30, 2000, in par. (9), in the second (formerly third) sentence, deleted "to an applicant born" following "issued".

**Related Laws:**

St.1997, c. 208, §§ 1 to 4, approved Nov. 28, 1997, and by § 5 made effective as of July 27, 1996, provide:

"Section 1. The jurisdiction of the district court juvenile sessions effective on July 26, 1996 shall continue in effect, except as amended by chapter 200 of the acts of 1996, until such time as a division of the juvenile court department having territorial jurisdiction corresponding to that of such division of the district court department is established or January 1, 1999, whichever shall first occur, pursuant to section 203 of chapter 379 of the acts of 1992; provided, however, that the divisions of the district court department in the counties of Middlesex and Norfolk shall continue to accept such cases and petitions for filing and issue process therein, until such time as a division of the juvenile court department having territorial jurisdiction corresponding to such divisions of the district court department is established, or January 1, 2002, whichever shall first occur. [Amended by St.1998, c. 487, § 2; St.1999, c. 174, § 2; St.2000, c. 384, § 29.]

"Section 2. Sections 1 to 13, inclusive, and sections 16 to 38, inclusive, of chapter 200 of the acts of 1996 shall apply to complaints filed and indictments returned for offenses allegedly committed on or after October 1, 1996.

"Section 3. Sections 14 and 15 of chapter 200 of the acts of 1996 shall apply to murder cases in which the murder was allegedly committed on or after July 27, 1996.

"Section 4. Defendants in delinquency actions pending on October 1, 1996 who have waived a first instance jury trial before such date shall be afforded an opportunity to withdraw such waiver and make an election according to the provisions of law established under chapter 200 of the acts of 1996."

St.1998, c. 487, § 2, an emergency act, was approved Jan. 15, 1999, and by § 5 made effective as of Dec. 31, 1998.

St.1999, c. 174, was approved Dec. 30, 1999, and by § 3 made effective Jan. 1, 2000.

St.2000, c. 384, § 29, an emergency act, was approved Jan. 4, 2001, and by § 58 made effective as of Jan. 1, 2001.

CROSS REFERENCES

     Criminal penalties for firearm violations, see c. 269, § 10.

LAW REVIEW AND JOURNAL COMMENTARIES

Federal and state firearm regulation in Massachusetts. Lisle Baker (1968) 12 Boston B.J. No. 11, p. 7.

Gun control. 15 Ann.Surv.Mass.L. 242 (1968).

RESEARCH REFERENCES

2006 Main Volume

**Treatises and Practice Aids**

3 Mass. Prac. Series § 57:12, Surrender of Firearms and Suspension of Firearms License.

18 Mass. Prac. Series § 479, Firearms.

32 Mass. Prac. Series § 306, Firearm Identification Cards.

32 Mass. Prac. Series § 307, Carrying a Dangerous Weapon.

33 Mass. Prac. Series § 1:8, Lodging Housekeeper and Lodger.

44 Mass. Prac. Series § 3, Philosophy of Delinquency Proceedings and Judicial Goals and Options.

14A Mass. Prac. Series § 9.221, Possession of a Firearm--Within Residence or Place of Business.

18B Mass. Prac. Series § 1952, Tort Liability--Public Body or Officer.

NOTES OF DECISIONS

    **Affidavits 2**
    **Affirmative defense 5**
    **Former felons 4**
    **Jury 11**
    **Records 1**
    **Review 6**
    **Revocation 3**
    1. Records

Application for license to carry firearms and application for firearm identification card are public records except to the

extent that application forms require information as to criminal history of applicant which would be exempted from disclosure by c. 4, § 7 and by c. 6, § 172. Op.Atty.Gen., Nov. 10, 1975, p. 127.

2. Affidavits

Affidavit which accompanied application for search warrant and which recited, inter alia, that named informant had told officer that defendant had all types of rifles and handguns stored in various rooms in shop, that defendant had displayed variety of guns to informant and had described some of the weapons as machine guns and that officer, based upon defendant's past record of convictions and observation in state hospital, believed that any possession by defendant of a firearm identification card would be by reason of false statements and information was sufficient to justify issuance of search warrant. Com. v. Fleurant (1974) 311 N.E.2d 86, 2 Mass.App.Ct. 250. Searches And Seizures ⟶ 116

3. Revocation

Firearm license applicants, whose licensees were revoked or suspended, were not entitled to relief under petition to single justice for extraordinary relief under Supreme Judicial Court's supervisory power, for declaratory relief, or for review under doctrine of public right, as applicants had not exhausted appellate process, and their petition to single justice raised no issue that could not have been raised in district court, reviewed in action in nature of certiorari, and addressed in customary appellate process. Levine v. Chief Justice of Dist. Court Dept. of Trial Court (2001) 750 N.E.2d 998, 434 Mass. 1014. Courts ⟶ 207.1

Law was clearly established that presence of guns in residential parole facility without proper license did not create exigent circumstances, as would support warrantless seizure of guns, and so police officer that performed warrantless seizure on guns in residential parole facility did not have qualified immunity from civil rights action brought by owner of guns; under statutory scheme governing revocation of license to own guns, revocation had to be in writing, subject of revocation had right of appeal, and obligation to turn over guns was suspended during pendency of appeal. Pasqualone v. Gately (1996) 662 N.E.2d 1034, 422 Mass. 398. Civil Rights ⟶ 1376(6)

4. Former felons

Massachusetts felony convictions could not be counted in sentencing defendant as armed career criminal for possession of rifles and shotguns as felon, since defendant's civil rights in Massachusetts were substantially restored and Massachusetts has not expressly prohibited defendant from shipping, transporting, possessing or receiving rifles or shotguns; Massachusetts defined "firearm" as limited to handgun and allowed felon, after five-year waiting period, to obtain firearm identification card, purchase shotgun or rifle, possess handguns, rifles, or shotguns at home, or carry rifles or shotguns upon his person or in car. U.S. v. Caron, D.Mass.1996, 941 F.Supp. 238, on subsequent appeal 118 S.Ct. 2007, 524 U.S. 308, 141 L.Ed.2d 303. Sentencing And Punishment ⟶ 1343

5. Affirmative defense

Defendant could not avail himself of statutory affirmative defense for those found in possession of a firearm whose firearm identification card (FID) issued was invalid for sole reason that it had expired, in prosecution for improper storage of a firearm and possession of a firearm without a valid firearm identification (FID) card; in order to raise affirmative defense based upon claim of license, defendant was required to notify prosecutor in writing of such intention, but he failed to do so. Com. v. Parzick (2005) 835 N.E.2d 1171, 64 Mass.App.Ct. 846. Criminal Law ⟶ 629.5(1)

6. Review

Defendant waived on appeal issue of whether he could avail himself of statutory affirmative defense for those found in possession of a firearm whose firearm identification card (FID) issued was invalid for sole reason that it had expired, in prosecution for improper storage of a firearm and possession of a firearm without a valid firearm identification (FID) card, as defendant made this claim for first time on appeal. Com. v. Parzick (2005) 835 N.E.2d 1171, 64 Mass.App.Ct. 846. Criminal Law ⟶ 1030(3)

<u>11.</u> Jury

Trial court was required at a minimum to inquire whether remaining jurors could remain fair and impartial following removal of juror based on alleged contact and communication between defendant and juror. <u>Com. v. Tennison (2003) 782 N.E.2d 1136, 57 Mass.App.Ct. 1108</u>, Unreported, review granted <u>787 N.E.2d 1058, 439 Mass. 1103</u>, reversed <u>800 N.E.2d 285, 440 Mass. 553</u>. Jury 🔑 149

Defense counsel's in-court statements suggesting actual contact and communication between defendant and juror, which thereby provided basis on which he found offending juror unfit to continue in trial, was sufficient to trigger mandatory voir dire. <u>Com. v. Tennison (2003) 782 N.E.2d 1136, 57 Mass.App.Ct. 1108</u>, Unreported, review granted <u>787 N.E.2d 1058, 439 Mass. 1103</u>, reversed <u>800 N.E.2d 285, 440 Mass. 553</u>. Jury 🔑 149

M.G.L.A. 140 § 129B, **MA ST 140 § 129B**

Current through Ch. 47, of the 2006 2nd Annual Sess.

© 2006 Thomson/West

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.