UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA,    )
            Plaintiff    )
                         )
        v.               )  CRIMINAL NO. 05-30013-MAP
                         )
ANTONIO MARIN,           )
            Defendant    )

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S RENEWED MOTION
FOR A JUDGMENT OF ACQUITTAL
(Docket No. 33)

May 4, 2006

PONSOR, D.J.

## I. INTRODUCTION

Defendant Antonio Marin was found guilty on April 5, 2006, of two firearm-related charges: possessing a firearm in furtherance of a drug trafficking crime (Count VI) and possessing a firearm and ammunition after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year (Count VII).[1]

Before the case went to the jury, Marin moved for a judgment of acquittal on both counts, arguing that the

---

[1] Prior to trial, Defendant pled guilty to Counts I-V, which charged drug offenses.

evidence was insufficient to sustain a conviction.    The court denied Marin's motion.

Defendant has now renewed his motion for acquittal. The government has filed no formal opposition.    For the reasons described below, the court will deny Marin's motion as to Count VI but will allow the motion as to Count VII.

## II. DISCUSSION

A. Count VI.

On Count VI, the jury found Marin guilty of possession, on or about February 24, 2005, of a firearm in furtherance of a drug trafficking crime, namely, possession with intent to distribute cocaine.

Marin argues that the government's evidence was insufficient to show that his possession of the firearm was to advance or promote his criminal activity.    In particular, Defendant contends that the government did not prove that the firearm had a specific and direct connection to the commission of the drug crime and that the firearm helped to facilitate, forward, advance, or promote the commission of the crime.    See United States v. Delgado-Hernandez, 420 F.3d 16, 25-26 (1st Cir. 2005); United States v. Felton, 417 F.3d

-2-

97, 104-05 (1st Cir. 2005).

The evidence offered at trial was more than sufficient to justify the jury's conclusion that possession of the handgun was "in furtherance" of the drug trafficking crime. Among other things, the gun was located, loaded and ready to fire, in very close proximity to Marin's drugs and related paraphernalia. This portion of Defendant's motion must be denied.

B. Count VII.

In Count VII, the jury found Marin guilty of possessing, on or about February 24, 2005, a firearm and ammunition, in or affecting interstate commerce, after having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C. § 922(g)(1).

Marin argues persuasively that the government has not proved the predicate offense necessary to show that he possessed the firearm as a convicted felon. At the time Marin was convicted of the relevant state law offenses, Massachusetts did not deprive a defendant of his civil rights or restrict his right to possess a firearm. Although

-3-

it is true, as the government noted orally when Defendant's
motion was originally filed, that Massachusetts law was
subsequently amended to bar an individual in Defendant's
position from obtaining a firearm license, strong authority
holds that the court must determine the effect of the
state's restoration of civil rights at the time such
restoration was granted and not at a later date.

Under 18 U.S.C. § 921(a)(20), "[a]ny conviction . . .
for which a person . . . has had civil rights restored shall
not be considered a conviction for purposes of this chapter,
unless such . . . restoration of civil rights expressly
provides that the person may not ship, transport, possess,
or receive firearms." 18 U.S.C. § 921(a)(20) (emphasis
added). The statute therefore sets up a two-part test: a
defendant must first show that his civil rights have been
restored and then demonstrate that his right to possess
firearms has not been curtailed.

Marin can easily show that his civil rights have been
restored. In United States v. Indelicato, 97 F.3d 627, 631
(1st Cir. 1996), the Court of Appeals held that civil
rights, to the extent that they were never taken away under

-4-

Massachusetts law, should be treated as "restored" for the
purposes of the federal statute.  The government must
concede that at the time Marin committed the supposed
predicate offenses it cites in support of Count VII, his
civil rights, including his right to possess a firearm had
been "restored" (in the sense that they had never been taken
away), as recognized in Indelicato.

The second part of the test set forth in § 921(a)(20)
presents the more difficult question in this case.  At the
time of Defendant's prior convictions, Massachusetts did not
bar individuals in his position from possessing a firearm.
See Mass. Gen. Laws. ch. 140, § 129B (1997).  In 1998,
however, Massachusetts amended this section to prohibit an
individual who "has ever, in a court of the commonwealth"
been convicted of certain relevant offenses, from possessing
of a firearm.  Mass. Gen. Laws. ch. 140, § 129B(1)(i)
(emphasis added); see also 1998 Mass. Legis. Serv. ch. 180,
§ 29 (West) (amending § 129B).  Thus at the time Defendant
engaged in the conduct underlying Count VII, Massachusetts
law in fact barred his possession of a firearm.

Although it is clear that state law now bars Marin from

-5-

possession of a firearm, the question before the court is whether 18 U.S.C. § 921(a)(20) requires application of the Massachusetts law that was in effect at the time Defendant's civil rights were originally restored (_i.e._, prior to 1998) or the amended law that was in effect at the time he was arrested in 2005.

The First Circuit has not squarely addressed this issue. Because it preceded the 1998 amendment of Mass. Gen. Laws ch. 140, § 129B, <u>Indelicato</u> did not confront the question of timing currently before the court.[2]

In <u>United States v. Norman</u>, 129 F.3d 1393 (10th Cir. 1997), the Tenth Circuit considered a fact situation virtually identical to the one confronting the court here. Norman had been convicted in 1976 of a state felony charge; three years later, after his release from prison and discharge from parole, his civil rights were restored by operation of Colorado law, and the state imposed no restriction on his ability to possess firearms. <u>Id.</u> at

---

[2] The Court of Appeals did address a related question of timing in <u>United States v. Denis</u>, 297 F.3d 25 (1st Cir. 2005). However, <u>Denis</u> relied on 18 U.S.C. § 922(g)(9), a firearm provision that does not implicate § 921(a)(20).

1396-97.   In 1993, Colorado amended its laws, making it a crime for a convicted felon to possess a firearm.   Id. at 1397.   Norman was arrested in 1994 and convicted under § 922(g)(1) of being a felon in possession of a firearm.   Id.

The Court of Appeals reversed Norman's conviction, holding that the 1976 state felony conviction could not serve as a predicate for the felon-in-possession charge. The Tenth Circuit quoted an earlier opinion by the Ninth Circuit, United States v. Cardwell, 967 F.2d 1349 (9th Cir. 1992):

> Section 921(a)(20) states that section 922(g)(1) applies if the pardon, expungement, or restoration of civil rights "expressly provides" that the defendant may not ship, transport, possess, or receive firearms.   The plain meaning of this use of the present tense is that the courts must determine the effect of the pardon, expungement, or restoration of civil rights at the time it is granted and cannot consider whether the defendant's civil rights later were limited or expanded.

Norman, 129 F.3d at 1397 (quoting Cardwell, 967 F.2d at 1350-51) (emphasis added); accord United States v. Haynes, 961 F.2d 50, 51-53 (4th Cir. 1992); United States v. Traxel, 914 F.2d 119, 123-25 (8th Cir. 1990).   The Tenth Circuit therefore held that

-7-

> [§] 921(a)(20) requires us to look to the law
> which was in effect at the time that [the
> defendant's] civil rights were restored, and then
> to determine whether that law "expressly provides"
> that he may not ship, transport, possess, or
> receive firearms.

Norman, 129 F.3d at 1397. Because Colorado law did not

contain a restriction on Norman's civil rights at the time

of restoration, the court reversed his conviction.

The Tenth Circuit's reasoning, which follows the trend

in several other circuits, is persuasive. See also United

States v. Kahler, No. 02-10231-REK (D. Mass. Oct. 9, 2003)

(allowing a defendant's motion to dismiss and following

Norman) (attached). Following Norman, the remaining

question in this case is whether Massachusetts law

"expressly provided" for a restriction on Marin's right to

possess firearms at the time his civil rights were restored.

As the First Circuit noted in Indelicato, no such

restriction applied under prior Massachusetts law. See 97

F.3d at 631 ("Nor are we concerned with the exception to the

exception -- the 'expressly provides' proviso at the end of

section 921(a)(20) -- for the government also concedes that

Massachusetts does not restrict a misdemeanant's rights to

'ship, transport, possess, or receive firearms.'"). Marin's

previous state law convictions are therefore insufficient to sustain a federal conviction under 18 U.S.C. § 922(g)(1).

### III. <u>CONCLUSION</u>

The ruling here carries with it a certain irony. Given the 1998 amendment to its laws, the Commonwealth of Massachusetts would be fully able to prosecute Defendant for his possession of a firearm. However, because Defendant's rights were restored without limitation at the time of his state convictions, the federal government lacks parallel authority.

For the reasons state above, Marin's Motion for Judgment of Acquittal is DENIED as to Count VI and ALLOWED as to Count VII. The matter has been set for sentencing on June 2, 2006.

It is So Ordered.

MICHAEL A. PONSOR
U. S. District Judge

-9-

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) CRIMINAL NO. 02-10231-REK |
| v. | ) |
| | ) |
| PETER KAHLER, | ) |
| Defendant | ) |
| | ) |

**Memorandum and Order**
October 9, 2003

**I. Pending Matters**

Pending for decision are the following matters and related filings:

(1) Defendant's Memorandum of Law (filed February 19, 2003) (Docket No. 34).

(2) Government's Response to Defendant's Motion to Dismiss and the Accompanying

Memorandum of Law (filed February 27, 2003) (Docket No. 35).

(3) Government's Motion *In Limine* (filed March 6, 2003) (Docket No. 37).

(4) Defendant's Supplemental Memorandum of Law (filed March 20, 2003) (Docket

No. 41).

(5) Government's Response to Defendant's Supplemental Memorandum of Law (filed

March 21, 2003) (Docket No. 42).

(6) Defendant's Response to Government's Response to Defendant's Supplemental

Memorandum of Law (filed August 21, 2003) (Docket No. 50).

(7) Government's Motion to Strike Defendant's Response (filed August 22, 2003) (Docket No. 51).

## II. Procedural and Factual Background

In counts 1 and 2 of the indictment (Docket No. 8), the defendant is charged with violating 18 U.S.C. § 922(g)(1), prohibiting possession of firearms by a person convicted of a predicate offense. In 1996, the defendant was convicted of violating MASS. GEN. L. ch. 90 § 24, operating under the influence of liquor, a misdemeanor punishable by up to two and a half years imprisonment. Government's Motion *In Limine* (Docket No. 37) at 2; Defendant's Memorandum of Law (Docket No. 34) ("Motion") at 1-2.

The defendant has filed a Memorandum of Law contending that the state conviction is not a predicate offense under § 922(g)(1). Motion at 2-3. The parties have treated this filing as a Motion to Dismiss Counts 1 and 2 of the Indictment. See, e.g., Government's Response to Defendant's Motion to Dismiss and the Accompanying Memorandum of Law (Docket No. 35) ("Response") at 4.

## III. Disposition of the Pending Matters

### A. Government's Motion to Strike Defendant's Response

The Government asks that I strike Defendant's Response (Docket No. 50) as untimely. In the hearing on July 11, 2003, I ordered defendant to file a supplemental brief within one week. He did not file his supplemental brief until August 21.

2

Nonetheless, the Government has not been prejudiced by the delay, nor has the

scheduling in this matter been affected by it. In the order below, I deny the Government's motion to

strike.

### B. Defendant's Motion to Dismiss

At the hearing on July 11, I noted that Massachusetts' 1999 refusal to renew

defendant's firearms permit would have some bearing in this case. The defendant responded that he

had transferred ownership of his firearms to his wife, who was duly licensed. He indicated that he

would file a new submission providing evidence of the transfer. Defendant's Response to Government's

Response to Defendant's Supplemental Memorandum of Law ("Evidentiary Submission") does not

provide direct evidence of the transfer of ownership. It does, however, provide sufficient evidence that

the defendant and his wife at least considered the firearms collection to be "jointly own[ed]."

Evidentiary Submission at Exhibit B. Moreover, defendant's wife was duly licensed to own firearms. Id.

at Exhibit D. Given this, I proceed to adjudicate the legal contentions argued in the briefs before me.

Counts 1 and 2 of the indictment (Docket No. 8) charge the defendant with violating 18

U.S.C. § 922(g)(1). That provision forbids

> any person. . . who has been convicted in any court of. . . a crime
> punishable by imprisonment for a term exceeding one year. . . to ship or
> transport in interstate or foreign commerce, or possess in or affecting
> commerce, any firearm or ammunition; or to receive any firearm or
> ammunition which has been shipped or transported in interstate or
> foreign commerce.

18 U.S.C. § 922(g)(1) (1999 & Supp. IV). In addition,

3

> [a]ny conviction which has been expunged, or set aside or for which a
> person has been pardoned or has had civil rights restored shall not be
> considered a conviction for purposes of this chapter, unless such
> pardon, expungement, or restoration of civil rights expressly provides
> that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20) (1999 & Supp. IV). The question before me turns on whether the defendant's

1996 conviction is cognizable under § 921(a)(20).

Section 921(a)(20) sets up a two-part test. As applied in this case, I must first

determine whether the defendant's civil rights were restored. If so, I must further ascertain, under the

"unless" clause, whether the "restoration of civil rights expressly provides that the [defendant] may not

ship, transport, possess, or receive firearms." With respect to the first half of the test, the Government

concedes that the defendant's civil rights were never revoked. Response at 1. Therefore, under United

States v. Indelicato, 97 F.3d 627, 631 (1st Cir. 1996), his civil rights are to be treated as restored, and

the first half of the test is satisfied. At issue here is the second half of the test, which, if met, would

render the defendant's 1996 conviction a predicate offense under § 922(g)(1).

The Government contends that restrictions on the "restoration" of the defendant's civil

rights may be found in Massachusetts law generally. Response at 2 (citing United States v. Sullivan, 98

F.3d 686, 689 (1st Cir. 1996)). Massachusetts forbids individuals who have been convicted of a

misdemeanor carrying a maximum sentence of imprisonment for more than two years, such as the

defendant, from obtaining a firearm license. Response at 2-3 (citing Mass. Gen. L. ch. 140 §§ 129B-

129C). Since Massachusetts curtails the defendant's right to possess firearms, the Government

contends that the second test is satisfied.

4

The defendant responds that, when he was convicted of the predicate misdemeanor in 1996, Massachusetts law did not, in fact, restrict his right to possess a firearm. The Massachusetts General Court amended Mass. Gen. L. ch. 140 § 129B in 1998, at that point restricting individuals in defendant's position from obtaining a firearm license. Defendant's Supplemental Memorandum of Law (Docket No. 41) ("Supplemental Memo") at 3-4. Defendant's license remained operative until it expired in 1999. Id. at 3, n. 1.

The defendant argues that I must determine whether his civil rights were restricted at the time of his original conviction in 1996. In support of this proposition, the defendant cites three cases: United States v. Hall, 28 F.3d 1066, 1068 (10th Cir. 1994); United States v. Cardwell, 967 F.2d 1349 (9th Cir. 1992); and United States v. Norman, 129 F.3d 1393 (10th Cir. 1997). Id. at 4. By contrast, the Government argues that I must look to Massachusetts law as it existed at the time the conduct underlying the current charges occurred. It defends this position by pointing to Melvin v. United States, 78 F.3d 327 (7th Cir. 1996) and United States v. Denis, 297 F.3d 25 (1st Cir. 2002). Response to Defendant's Supplemental Memorandum of Law (Docket No. 42) ("Supplemental Response") at 2-3. Other than Denis (which I conclude, below, is not on point), neither party has cited any relevant First Circuit precedent, nor have I discovered any.

I find the Tenth Circuit's reasoning in Norman persuasive, and conclude that I must examine state law at the time of the predicate offense, i.e., in 1996. In Norman. the Tenth Circuit confronted a situation where the defendant had been previously convicted of a felony in Colorado. Under state law, the defendant's civil rights were restored upon his release from prison. Some time

5

after the defendant's release, Colorado amended its laws, making it illegal for a convicted felon to

possess firearms. 129 F.3d at 1397. The court stated:

> As the Ninth Circuit explained in United States v. Cardwell, 967 F.2d
> 1349 (9th Cir.1992):
>
> > Section 921(a)(20) states that section 922(g)(1) applies if the
> > pardon, expungement, or restoration of civil rights "expressly
> > provides" that the defendant may not ship, transport, possess,
> > or receive firearms. The plain meaning f this use of the present
> > tense is that the courts must determine the effect of the pardon,
> > expungement, or restoration of civil rights at the time it is
> > granted and cannot consider whether the defendant's civil rights
> > later were limited or expanded.
>
> We agree with our sister circuits. Section 921(a)(20) requires us to
> look to the law which was in effect at the time that Norman's civil rights
> were restored, and then to determine whether that law "expressly
> provides" that he may not ship, transport, possess, or receive firearms.
> As noted, Colorado law did not expressly limit Norman's possession of
> firearms at the time his civil rights were restored. Therefore,
> notwithstanding any later limitation which may have been imposed, his
> 1976 conviction could not serve as a predicate offense under §
> 922(g)(1), and the district court erred in refusing to dismiss.

Id. at 1397-98 (citations and footnotes omitted) (emphasis in original). I rule that the plain language of

the statute requires me to examine state law as it existed at the time of the restoration of civil rights.

Here, in contrast with the circumstances of in Norman, no explicit restoration of civil

rights was declared. The reasoning in Norman, however, remains applicable. Section 921(a)(20)

requires me to determine whether the "restoration of civil rights expressly provides" for restrictions on

the defendant's right to carry firearms. Indelicato requires me to treat the defendant's civil rights as

having been "restored" by the fact that they were never taken away. 97 F.3d 631. I am therefore to

determine whether the failure of Massachusetts to restrict the defendant's civil rights "expressly

6

provides" for a restriction on the defendant's right to carry firearms. In order to make sense of this task,

I must view Massachusetts' silence as an explicit decision not to restrict the civil rights of defendants.

Viewed in this light, Massachusetts' restoration of defendant's civil rights occurred by virtue of the law

as it existed when the defendant was convicted, i.e., in 1996. Since Massachusetts law, in 1996, did

not restrict the defendant's right to possess firearms, the "unless" clause in § 921(a)(20) is not satisfied,

and the conviction is not a predicate offense under § 922(g)(1).

Under the reasoning in Norman, which I have accepted, a contrary result would be

anomalous. If a state restores a defendant's civil rights after having taken them away, then later amends

its laws to restrict the defendant's right to possess firearms, courts are to look to the law at the time of

the predicate offense to determine whether § 921(a)(20)'s "unless" clause is satisfied. 129 F.3d at

1397-98. It would make little sense if the result were different if a state never revoked the defendant's

civil rights in the first place. See Indelicato, 97 F.3d at 630.

Nor are the cases the Government cites apposite. Citing Melvin v. United States, 78

F.3d 327 (7th Cir. 1996) and United States v. Denis, 297 F.3d 25 (1st Cir. 2002), the Government

contends that a circuit split exists on the issue confronted by Norman, and that the First Circuit is likely

to come to a conclusion at odds with that reached by the court in Norman. Supplemental Response at

3-4. Melvin, however, is not inconsistent with Norman or with my analysis. Central to the Melvin

court's analysis was the fact that "Illinois never 'restored' all of Melvin's civil rights within the meaning

of the second sentence of section 921(a)(20)." 78 F.3d at 329. Here, no doubt exists that

Massachusetts restored the defendant's civil rights. Nor is Denis relevant to my analysis. The defendant

7

in <u>Denis</u> was prosecuted under 18 U.S.C. § 922(g)(9). 297 F.3d at 27. In this case, my conclusion is

dictated by the language of § 921(a)(20), a section that is not implicated in <u>Denis</u>.

   The Government's policy contention is unavailing. The Government contends that

Massachusetts has determined that the defendant is not sufficiently trustworthy to carry a firearm.

Supplemental Response at 4. But this argument begs the question: Which of Massachusetts'

determinations am I to credit? In 1996, Massachusetts believed the defendant to be trustworthy; in

1998, it did not. As I explained earlier, § 921(a)(20) answers this question by reference to the time of

the restoration of civil rights. Since Massachusetts considered the defendant trustworthy in 1996, his

conviction at that time cannot serve as a predicate offense under § 922(g)(1).

**ORDER**

For the foregoing reasons, it is ORDERED:

(1) Defendant's Motion to Dismiss Counts 1 and 2 of the Indictment (contained in

Docket No. 34) is ALLOWED. Counts 1 and 2 of the indictment are dismissed.

(2) Government's Motion to Strike Defendant's Response (Docket No. 51) is

DENIED.

(3) Since Government's Motion *In Limine* (Docket No. 37) relates to evidence

pertaining to counts 1 and 2 of the indictment, that motion is DISMISSED as moot.

(4) A status and scheduling conference will be held on October 23, 2003 at 11:00 a.m.

/s/

Senior United States District Judge

9